

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

ALB
F.#2010R02118

*610 Federal Plaza*
*Central Islip, New York 11722*

May 5, 2014

The Honorable Arthur D. Spatt
United States District Judge
Eastern District of New York
1024 Federal Plaza
Central Islip, New York 11722

> Re:  United States v. GILBERT SOLNIN,
>      also known as "Gil SOLNIN" and "Gil Solomon,"
>      Criminal Docket No. 12-CR-0040(S-1)(ADS)

Dear Judge Spatt:

The government writes in response to the defendant's pre-trial motions filed March 27, 2014 seeking: (1) dismissal with prejudice of Counts One through Fifteen of the superseding indictment based upon a claimed speedy indictment violation pursuant to 18 U.S.C. § 3161(b) and F.R.Crim.P. 48(b)(1); (2) a bill of particulars; (3) disclosure of Rule 404(b) evidence; (4) disclosure of residual hearsay evidence pursuant to Rule 807; and (5) disclosure of <u>Brady</u> and <u>Giglio</u> information.

As set forth below, SOLNIN's request for dismissal with prejudice should be denied as SOLNIN sought to exclude time during the period of which he now complains. As such, the prior complaint was properly dismissal <u>without</u> prejudice. At best, SOLNIN can show only a ministerial error in failing to enter the relevant prior exclusion order which would not have merited a dismissal with prejudice in any event. Moreover, as set forth below, SOLNIN's requests for a Bill of Particulars and other disclosures should be denied at this time and/or dealt with as described below.

I.   BRIEF SUMMARY OF RELEVANT FACTS

     A.   The Initial Complaint

          SOLNIN, a resident of Plainview, New York, was initially arrested on **February 16, 2011**, pursuant to a complaint

(11-0151M), charging him with one count of mail fraud occurring between December 1, 2007 and February 11, 2011. See Docket Entry #1; attached as Exhibit 1. This count charged that SOLNIN had defrauded two marketing and advertising agencies located outside of New York, Doe Agencies #1 and #2, by holding himself out to be a manager or operator for various company ventures seeking advertising and marketing assistance. Id. at p. 4. The scheme involved SOLNIN contacting a representative of the marketing or advertising agency by e-mail, indicating that he had a "unique opportunity" whereby a new venture was being formed. Id. at p. 4. In fact, SOLNIN had no agreements or contracts with the companies he claimed to represent and/or work with. Id. at p. 4. Soon thereafter, SOLNIN indicated that he needed the marketing and advertising agency to represent this venture and solicited a monthly retainer of $3,500 to $8,000 each month for two to three months, until the venture was to come to fruition and a contract could be entered into. Id. at p. 4. After receiving monies, in person, by U.S. Mail, private and commercial interstate carriers and wire transfers, SOLNIN either ceased further communications and/or explained that accidents and/or illnesses had befallen him and the promised ventures never in fact came to pass. Id. at p. 4. The mail fraud complaint specifically alleged mailings of payments sent by 1) Doe Agency #1 between October 2008 and January 2009 to SOLNIN at his Plainview residence and 2) a payment sent by Doe Agency #2 between April and June 2009 via private commercial interstate carrier to SOLNIN at his Plainview residence. Id. at p. 5-6. These mailings correspond with Counts Four and Seven of the current Superseding Indictment S-1.

On February 16, 2011, SOLNIN appeared before the Honorable Magistrate Judge E. Thomas Boyle for arraignment. See Docket Entry #4. At the arraignment, SOLNIN was released on $250,000 secured bond and waived his right to a preliminary hearing. Id.

B.   Plea Negotiations and Waivers

On March 21, 2011, SOLNIN appeared before the Honorable Judge A. Kathleen Tomlinson, U.S. Magistrate, and executed a request for an order of excludable delay, waiving speedy indictment for the time period from **March 15, 2011 to April 18, 2011** for the purposes of plea negotiation. See Docket Entry #9. This request was granted and an Order of Excludable Delay issued. See Docket Entry #10; attached as Exhibit 2. Thus, at this point, **27 days of the speedy indictment clock had elapsed**.

Thereafter, on April 13, 2011, based upon a request by the parties in light of continuing plea negotiations, an Order of Excludable Delay was issued by Judge Boyle for the time period from **April 18, 2011 to May 19, 2011.** See Docket Entry #11; attached as Exhibit 3.

On May 13, 2011,[1] SOLNIN and then-defense counsel Joseph Conway, Esq. signed and provided a request for an Order of Excludable Delay to the government seeking to exclude the time period from **May 18, 2011 to June 17, 2011** in light of continuing plea negotiations. See Waiver Form Copy; Attached as Exhibit #4. The government signed this fax copy, made a copy to keep in the government's file and sent the original up to the duty magistrate via interoffice mail on May 13, 2011. According to the Docket, this order was never entered. Following the filing of SOLNIN's motion papers on March 27, 2014, the government requested that the clerk's office and the clerk for the magistrate on duty at that time look for the original request, however, that search was unsuccessful.

In any event, on June 16, 2011, SOLNIN appeared before the Honorable Magistrate Judge Arlene R. Lindsay, at which time counsel indicated that SOLNIN wished to waive speedy indictment as the defense had "been having meetings with the Government" which were "making progress" and which would "hopefully lead to resolution" of the charges. See minutes of June 16, 2011, p. 2; attached as Exhibit 5. The Court then inquired of SOLNIN who agreed to the additional 30 day waiver of speedy indictment. Id. at p. 2-3. The Court than issued an Order of Excludable Delay based for the time period from **June 16, 2011 to July 15, 2011**. Id. at p.4; see also Docket Entry # 13; attached as Exhibit 6.

On July 7, 2011, the government provided a plea agreement proposal to defense counsel via e-mail. See E-mail attached as Exhibit 7. The parties then met in person on Friday, July 15, 2011. At this meeting the parties could not reach an agreement and plea negotiations broke off. The government indicated at this meeting that it would pursue an indictment of SOLNIN.

---

[1]   Although this request was dated May 16, 2011 by SOLNIN, this appears to be an error on his part as the request was faxed to the government by defense counsel on May 13, 2011.

C. The Dismissal Without Prejudice

The same day, **July 15, 2011**, the government submitted a request to the duty magistrate, Judge Lindsay, to dismiss the complaint without prejudice. See Docket Entry # 15; attached as Exhibit 8. This request was "so ordered" by Magistrate Judge Lindsay the same day, July 15, 2011. Id. Via e-mail on July 18, 2011, defense counsel indicated that he understood from the prior meeting that the government would be seeking SOLNIN's indictment.

D. The Initial Indictment, Further Plea Negotiations and Additional Waivers

On January 12, 2012, the Grand Jury voted an Indictment as to SOLNIN charging eight counts of Mail Fraud (Counts One through Eight) and six counts of Wire Fraud (Counts Nine through Fourteen). See Docket Entry # 16; attached as Exhibit 9. These counts all related to a scheme by SOLNIN to target various advertising and marketing agencies around the United States and obtain "advance fees" in a similar manner to the allegations concerning Doe Agency #1 and #2 as outlined in the complaint. Id. The initial indictment included Mail Fraud counts as to Doe Agencies #1 and #2 (Counts Four and Seven), as well as counts involving crimes as to twelve additional victim agencies.

At the time of SOLNIN's arrest pursuant to the initial indictment, the government had also learned that SOLNIN was involved in a second scheme targeting distilleries (described below) which continued even while SOLNIN was negotiating a possible plea to the initial complaint and continued after the dismissal of the initial complaint. Although this information was discovered too late to include in the initial indictment, following SOLNIN's arraignment on January 27, 2012, the parties engaged in plea negotiations in an attempt to agree to a global plea encompassing both schemes.

During these plea negotiations, SOLNIN continued to waive his right to a speedy trial from January 27, 2012 to December 13, 2013. See Docket.

E. The Superseding Indictment

On November 19, 2013, another Grand Jury voted a Superseding Indictment as to SOLNIN charging one additional

4

count of Mail Fraud (renumbered Count Nine) and four additional counts of Wire Fraud (Counts Sixteen through Nineteen). See Docket Entry # 62; attached as Exhibit 10. These counts all related to the second scheme by SOLNIN which targeted beverage distilleries in a similar manner to SOLNIN's earlier scheme, by making false and fraudulent representations to the "John Doe Distilleries" about his ability to secure placement of their products through purported distributors located in New York. Id. Much like SOLNIN's first scheme involving the John Doe Agencies, the John Doe Distilleries were directed to send SOLNIN advance commission fees in amounts ranging from $1,000 to $4,000 via United States mail, private commercial carriers and electronic wire transfers. Id. After SOLNIN received the funds, he would discontinue substantive communications with the John Doe Distilleries and did not place their products or refund advanced commission fees to them as promised. Id.

On November 22, 2013, SOLNIN was arraigned on the Superseding Indictment, and he has continued to waive speedy trial up to and including July 18, 2014. See Docket.

II.  ARGUMENT

   A.  THERE WAS NO VIOLATION OF THE SPEEDY TRIAL ACT

Although there was apparently a ministerial error in the failure to execute and/or enter the Order of Excludable Delay for the time period from May 18, 2011 to June 17, 2011, the record is clear that SOLNIN both sought and consented to the exclusion of this time period in light of ongoing plea negotiations. As such, there was no speedy indictment violation here and the complaint was properly dismissed without prejudice. In any event, even if there were such a violation, dismissal should be denied as SOLNIN cannot show prejudice from such a ministerial error. Finally, if the Court were to order such dismissal, it should be without prejudice and limited as discussed below.

      1.  Legal Authority

Under the Speedy Trial Act, 18 U.S.C. § 3161(b), "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." Id. Pursuant to the Speedy Trial Act, the remedy for a speedy indictment violation is dismissal of the indictment. 18 U.S.C. § 3162(a)(1). The

5

Supreme Court in <u>United States v. Taylor</u>, 487 U.S. 326, 334 (1998), noted that ". . . the decision to dismiss with or without prejudice is left to the guided discretion, with neither remedy having priority." <u>Id</u>. As to "whether to dismiss the case with or without prejudice," Section 3162(a)(1) directs courts to "consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." <u>Id</u>. The Supreme Court has further directed courts to consider the prejudice suffered by the defendant as a result of the delay. See <u>Taylor</u>, 487 U.S. at 334 ("[T]here is little doubt that Congress intended this factor to be relevant for a district court's consideration."); <u>accord</u> <u>United States v. Wilson</u>, 11 F.3d 346, 352 (2d Cir. 1993); <u>United States v. Kiszewski</u>, 877 F.2d 210, 213 (2d Cir. 1989); <u>see also</u> <u>United States v. Upton</u>, 921 F.Supp. 100, 105 (E.D.N.Y. 1995) ("The third factor—the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice, must, of necessity, also embrace the unexpressed factor of prejudice to the defendant."). The "[d]efendant bears the burden of proof supporting such a motion." See <u>United States v. Adams</u>, 448 F.3d 492, 503 (2d Cir. 2006).

In terms of consideration of the "circumstances of the case which led to the dismissal," courts often look to the prosecutor's role in an alleged speedy indictment violation. For example, in <u>United States v. Caparella</u>, 716 F.2d 976 (2d Cir. 1983), the Second Circuit reversed the decision of the District Court to dismiss an information *without* prejudice where the Circuit Court found there to be warranted prejudice to the defendant in the dismissal of the information based on the government's actions. <u>Id</u>. at 980. The Court noted that the prejudice manifested from "the prosecutor's negligence." <u>Id</u>.

As the Supreme Court held in <u>Taylor</u>, absent a showing of more than "an isolated unwitting violation" of speedy indictment by the prosecutor, dismissal with prejudice would not be warranted. <u>Id</u> at 339. As the Court noted, dismissal with prejudice required a showing of "truly neglectful attitude," "bad faith," a "pattern of neglect," or other serious misconduct. <u>Id</u>. at 338-39; <u>accord</u> <u>United States v. Wilson</u>, 11 F.3d 346, 352-53 (2d Cir. 1993); <u>see also</u> <u>United States v. Montecalvo</u>, 861 F.Supp.2d 110 (E.D.N.Y. 2012)(Spatt, J.) (dismissal with prejudice of indictment charging bid rigging scheme in publically funded contracts where "[y]ears passed without any documented effort on the part of the Government to

6

move the case to the next stage of the criminal procedure, and this can only be properly characterized as a lackadaisical attitude towards . . . prosecution).

In terms of prejudice to a defendant, the Court should examine whether the defendant's "ability to defend himself against the indictment is adversely effected by dismissal of the complaint without prejudice." United States v. McCrudden, 222 F.Supp.2d 352, 355 (E.D.N.Y. 2002)(Spatt, J.)(citing United States v. Agugbo, 2000 WL 666341, at *3 (S.D.N.Y. 2000)). Courts should also consider whether the defendant consented to delays. United States v. Wilson, 11 F.3d 346, 353 (2d Cir. 1993)("[A]ppellants had consented to the delays and cannot now complain that they were harmed by them.").

> 2.   The Complaint Was Properly Dismissed Without Prejudice and There Was No Speedy Indictment Violation

Initially, the government notes that there was no speedy indictment violation here, and, as such there is no need for the Court to even consider the factors as to whether the dismissal with prejudice was unwarranted. Specifically, SOLNIN requested that the relevant time period of which he now complains -- May 18, 2011 to June 17, 2011  -- be excluded from the speedy indictment clock as he was involved in ongoing plea negotiations with the government. As set forth above, these plea negotiations continued up until the very day the complaint was dismissed. Although the request by the parties (including SOLNIN) to exclude this period does not appear to have been executed by the court and entered onto the docket, it is clear that the parties intended that it be so entered. As such, at most, the unexecuted and/or unentered Order of Excludable Delay was simply a ministerial error. There is no reason that the Court cannot now order that period excluded pursuant to the request and the government respectfully asks the Court to do so.

The record shows that even after the period covered by the unexecuted order of excludable delay, the defendant again sought and was granted an additional wavier of speedy indictment for the purposes of plea negotiation on June 16, 2011. See Exhibit 5. SOLNIN never objected when questioned by the magistrate at the proceeding, thereby implicitly agreeing that the prior request for exclusion from May 18, 2011 to June 17, 2011 had been granted. Id.

As such, on July 15, 2011, when plea negotiations broke down and the government sought a dismissal of the complaint without prejudice, only 27 days had been chargeable to the speedy indictment clock.

Even assuming *arguendo* that there was a technical violation of the speedy indictment right which went unnoticed by the parties or the magistrate below, it is clear that the dismissal without prejudice was appropriate, as described more fully below. In sum, where the government was not lax (and in fact took its obligation seriously), the defendant cannot show prejudice (as he sought to exclude this time and benefitted by continuing plea negotiations) and the crimes charged are serious (as described below), the dismissal of the complaint with prejudice was proper in any event.

3. The Offenses Here Are Serious, and Solnin Cannot Show Either a Negligence by the Government or Prejudice to Himself

a. The Seriousness of the Crimes

While SOLNIN argues that his crimes are "non-violent," the crime of fraud is not *per se* "non-serious," simply because no one was physically accosted or harmed during its commission. Here, SOLNIN's frauds were exacerbated by the fact that he targeted multiple victims in far flung jurisdictions all over the United States for small amounts in an apparent effort to avoid law enforcement scrutiny and he even continued his second scheme while he was negotiating with the government concerning a possible plea as to his initial scheme.

b. The Circumstances of the Case Which Led to the Dismissal and the Lack of Government Negligence

Here, the government negotiated in good faith with SOLNIN (who did not negotiate in good faith as evidenced by his continuing to commit frauds during this period) and sought the three exclusions of speedy indictment time for approximate 30-day periods to allow these negotiations to proceed. Moreover, as to the relevant period of the unexecuted order of excludable delay -- from May 18, 2011 to June 17, 2011 -- the government obtained a timely request for exclusion from SOLNIN and his counsel 6 days before the expiration of the first waiver period (9 days before the expiration of the 30-day speedy indictment clock) and sent it to the duty magistrate. The government was

8

even conscientious enough to keep a copy in the file in case of
a later dispute.  The government's only fault here was failing
to notice that the exclusion order was never apparently executed
(or possibly executed but not entered on the docket).  SOLNIN
apparently did not notice either as at the June 16, 2011
proceeding, he did not object and in fact sought the final 30-
day exclusion.  Respectfully, the magistrate did not catch this
unexecuted order either.  Where all the parties and the Court
believed this order had been entered, it would be unfair to
attribute the error to the government alone.  This was clearly
at most "an isolated unwitting violation" as envisioned by
Taylor.  487 U.S. at 339.

> c.   Impact  of  a  Reprosecution  and  Lack  of
>      Prejudice to Solnin

The administration of justice would not be adversely
impacted by the continued prosecution of SOLNIN as to the
conduct in the underlying initial complaint (mail fraud as to
two of the victim agencies).  Despite SOLNIN's self-serving
affidavit (in which he conveniently failed to recall his request
to exclude the relevant time period), it is clear that he
suffers no prejudice whatsoever from a continued prosecution
which includes all of his victims.

As set forth below, even if dismissal with prejudice
had been appropriate, it would apply only to mail fraud counts
(not wire fraud) and then, only as to the two victims described
in the complaint (i.e., Counts Four and Seven of the current
Superseding Indictment).  As such, the dismissal with prejudice
of the crimes as to these two victims would not change the
trial, as this conduct would still clearly be admissible
pursuant to Federal Rule of Evidence 404(b) to show SOLNIN's
intent, motive, lack of mistake, common plan, etc.

Moreover, where SOLNIN 1) used the time he was
purportedly negotiating a plea on the initial complaint to
continue to commit crimes; 2) thereafter agreed to waiver for
further plea negotiations from January 27, 2012 to July 18,
2014; and 3) waited over two and one-half years following the
dismissal to complain that it should have been with prejudice
and thereby let the government expend resources on two separate
Grand Jury proceedings; he cannot be said to have been
prejudiced.  To rule otherwise would allow a defendant to game
the system.  Although SOLNIN claims to have suffered anxiety, he
never took any steps of actively end this alleged anxiety.

Rather, he waited and continued to engage in active plea negotiations with the government.

> 3. Even if the Court Were Inclined to Dismiss Some Counts, Because the Complaint Was Limited to Mail Fraud and Did Not Include Wire Fraud, Dismissal Would Only Be Appropriate As To Two Mail Fraud Counts and Should be Without Prejudice

As the initial complaint charged SOLNIN only with mail fraud as to two victims (now reflected in Superseding Indictment Counts Four and Seven), a broader dismissal as sought by SOLNIN (both mail and wire fraud -- Counts One through Eight and Counts Ten through Fifteen) would be inappropriate even if the Court were to find a speedy indictment violation and order dismissal with prejudice.

As the Second Circuit made clear in United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004), Section 3161(a)(1) dismissal is charge-based, not transaction based:

> [C]ourts will not dismiss an untimely indictment pursuant to § 3162(a)(1) if it pleads different charges from those in the complaint, and this applies even if the indictment charges "arise from the same criminal episode as those specified in the original complaint or were known or reasonably should have been known at the time of the complaint." United States v. Napolitano, 761 F.2d [135,] 137 [(1985)]. Our sister circuits agree and similarly construe the dismissal sanction of § 3162(a)(1) narrowly. See United States v. Watkins, 339 F.3d 167, 174 & n. 5 (3d Cir. 2003); United States v. Miller, 23 F.3d 194, 199 (8th Cir. 1994); United States v. Nabors, 901 F.2d 1351, 1355 (6th Cir. 1990); United States v. Giwa, 831 F.2d 538, 541 (5th Cir. 1987); United States v. Heldt, 745 F.2d 1275, 1280 (9th Cir. 1984); United States v. Brooks, 670 F.2d 148, 151 (11th Cir. 1982).

Id. at 451-52.

10

Here, SOLNIN's initial complaint alleged no wire fraud charges whatsoever. Therefore, despite his claim, Counts Ten through Fifteen cannot be dismissed on this basis. Moreover, as the single mail fraud charge in the complaint only referenced two of the victims in the initial scheme (now found in Counts Four and Seven), SOLNIN does not explain how the uncharged conduct as to the victims which was first charged in the initial indictment and now compromise Counts One through Three, Five, Six and Eight, could in any way be implicated by the alleged speedy trial violation as to conduct involving other victims.

B.     THE DEFENDANT'S MOTION FOR A BILL OF PARTICULARS

The government has no objection to confirming with defense counsel the identities of the John Doe victims and providing corresponding e-mails and/or items underlying the charged counts. The government will provide this information, prior to or at the time of the next status conference in this case.

C.     THE DEFENDANT'S MOTION FOR DISCLOSURE OF RULE 404(B) EVIDENCE SHOULD BE DENIED AT THIS TIME

The government submits that this motion should be denied at this time with leave to renew after the government has served detailed Rule 404(b) notice. The government has not yet identified such evidence. The government expects to serve such notice 45 days prior to trial.

D.     THE DEFENDANT'S MOTION FOR DISCLOSURE OF RESIDUAL HEARSAY EVIDENCE PURSUANT TO RULE 807 SHOULD BE DENIED AT THIS TIME

The government submits that this motion should be denied at this time with leave to renew when and if the government serves notice pursuant to Rule 807. The government has not yet identified any such evidence. The government expects to serve such notice at least two weeks prior to trial.

E.     THE DEFENDANT'S MOTION FOR DISCLOSURE OF BRADY AND GIGLIO INFORMATION

The government is not currently aware of any Brady or Giglio material. The government is aware of its duties in this regard and will provide any such items as required by statute and case law.

11

III. <u>CONCLUSION</u>

      For all the foregoing reasons, the defendant's motion seeking dismissal of counts with prejudice should be denied. The defendant's remaining requests should be dealt with as provided above.

                    Respectfully submitted,

                    LORETTA E. LYNCH
                    United States Attorney


            By:   _____
                    Allen L. Bode
                    Assistant United States Attorney


cc:  Richard D. Haley, Esq. (via ECF and E-Mail)

12